[No. 2125.]

THE ALBRO MINING AND MILLING COMPANY v. CHINN.

### 1.  Corporations—Principal and Agent.

Where a mine owner, for the purpose of borrowing money on the stock to operate the mine, incorporated a company and took practically all the capital stock in consideration for transferring the mine to the corporation, and hypothecated the stock as collateral security for money borrowed to operate the mine, which he continued to operate under a verbal lease from the directors of the corporation the same as he had operated before organizing the corporation, employed and discharged the men, purchased the supplies for the mine in his individual name paying the bills partly in cash and partly by his individual checks, shipped the ore in his name and applied the proceeds to his own use, the facts were not sufficient to constitute said operator the ostensible agent of the corporation so as to make the corporation liable for debts created by him in operating the mine, the creditors having dealt with him in his individual name.

### 2.  Corporations—Officers—Principal and Agent.

The fact that the treasurer of a corporation who was also a director had possession of and operated a mine, in the absence of proof that he was authorized to take such possession and operate it for the corporation, is not sufficient to raise the presumption or implication that he was by virtue of his office authorized to act for the corporation, and the corporation would not be bound by his acts.

*Appeal from the District Court of Clear Creek County.*

Mr. H. A. LINDSLEY, for appellant.

Mr. W. S. DECKER, of counsel.

Mr. E. M. SABIN, for appellee.

MAXWELL, J.

Chinn sued the appellant corporation upon an account for goods, wares and merchandise alleged to have been sold and delivered by him to the corporation at its request, and upon five counts for work and labor alleged to have been done and performed, and material alleged to have been furnished to the corporation at its request by others, which last accounts were assigned to Chinn prior to the commencement of this suit.

The case was tried to a jury, which returned a verdict against appellant, upon which judgment went, from which this appeal.

At the close of the testimony, defendant requested the court to charge the jury to find the issues joined in favor of the defendant, which request was refused, exceptions saved and error is assigned thereon.

Prior to February 6, 1896, W. H. Price was the owner, in possession of and operating certain mining properties in Clear Creek county, this state, known as the Albro mine; that date, the Albro Mining and Milling Company, appellant, was incorporated; the articles of incorporation named W. H. James, James B. Grant, Dennis Sullivan, E. J. Seeley and W. H. Price directors for the first year; capital stock 1,000,-000 shares, par value $1.00. The directors named in the articles of incorporation met and organized by adopting by-laws and electing officers: W. H. James, president; Dennis Sullivan, vice president; E. J. Seeley, secretary, and W. H. Price, treasurer. The office of general manager or agent, provided for by the by-laws, was not filled. This was the only meeting held by the board of directors of the corporation.

999,995 shares of full-paid capital stock of the company was issued to W. H. Price as consideration for the conveyance by him to the corporation of the mining claims known as the Albro mine.

At the date of the incorporation of the company, the Denver National Bank held Price's past-due note, upon which James, Sullivan and Grant were sureties. The bank was urging payment of the note. Price could not pay and was anxious to procure money to continue operations at the mine. Price induced James, Sullivan and Grant to sign another note with him to the bank, for an amount sufficient to take up the old note and give him $8,000.00 with which to continue operations at the mine, and deposited with these gentlemen the stock of the Albro Mining and Milling Company as collateral security to secure them in the risk assumed in becoming his sureties on the note.

After this transaction Price continued operations at the mine as before. The former superintendent remained in charge of the work, receiving his instructions from Price and no one else. Price and the superintendent employed and discharged the men, purchased the supplies for the mine in the name of Price, shipped the ore produced from the mine to the mills in the name of Price, who received the proceeds thereof, applied them to his own use, making no account thereof to the company. The money expended on and in the mine, the bills for supplies and material furnished the mine for nearly two years were paid by Price, partly in cash and partly by checks, signed "W. H. Price."

Seeley, the secretary of the company, son-in-law of Price, was the only other officer or director of the company who was ever on the property after the incorporation of the company.

Mr. James, president of the company, testified that the company was organized to enable Price to borrow money on the stock; that the company never took possession or authorized or empowered anyone to take possession or operate the property for it;

that it did no work, and controlled no bills on account of operating the property; that Price was operating the property on his own account, shipping the ore, receiving the proceeds and applying them to his own purposes; that the company did not know that Price was contracting any indebtedness on account of the company; that he knew nothing of the claims involved in this suit until after suit was brought, when summons was served upon him as president of the company.

Price testified, in substance, that when the company was organized, three of the directors thereof, orally leased the property to him upon the terms, among others, that he should and would operate and manage the same entirely for his own personal and private use and benefit, and at his own personal and private expense; that he conducted operations upon the property personally and individually and for his own use and benefit and not for the company; that he was personally liable for the expenses of the same; that all statements of account and bills were rendered against him personally and individually and not against the company, and were so kept upon the plaintiff's books; that all ore shipped and sold from the mine was shipped and sold by him and the proceeds retained by him for his personal use and benefit.

The fundamental proposition which it was necessary for plaintiff to establish, to entitle him to recover in this action, was the agency of Price. To establish this proposition, a certified copy of the articles of incorporation and Price's deed to the company were introduced in evidence. Testimony was also introduced tending to prove that some supplies and machinery were consigned to The Albro Mining and Milling Company—upon whose order this was done, however, does not satisfactorily appear, none of these

items are involved in this suit;—that plaintiff and some of his assignors early in 1896 knew of the incorporation of the company; that plaintiff opened his account in the name of W. H. Price; that he went to Price personally and had a conversation with him in regard to the matter; that Price said: "The Albro mine was good for it anyway; he said it was worth enough to buy my store two or three times. If you are afried of your money you can take the Albro mine for it."

After this conversation the account was still kept against Price, statements rendered to him and payments made by him.

Plaintiff testified that at the time he considered Price "perfectly solid."

There was no testimony whatever tending to show that either the plaintiff or any of his assignors had any conversation whatever with any officer of the company, or made any attempt whatever to ascertain whether or not Price was authorized to contract any indebtedness on account of the company.

Witnesses testified that Seeley, secretary of the company, made two visits to the property and made some statements about what the company intended to do after ore was struck. Seeley had no recollection of having made such statements.

A more extended presentation of the evidence is not deemed necessary.

From a very thorough and critical examination of all the testimony in the case, we are of the opinion that the plaintiff failed to establish by competent testimony the fundamental proposition which would entitle him to recover in this action.

Counsel for appellee contends that the nature of the business done and the character of the agency itself shows such authority by implication, that plaintiff and his assignors had a right to rely under the

law upon those appearances, and *actual proof of power* was thereby dispensed with, citing in support of this proposition, *Mining Company v. Fraser,* 2 Colo. App. 15.

In the Fraser case, there was no question as to the *appointment* of the agent. That fact was admitted. There the question was, Did the agent act within the scope and extent of the powers conferred by virtue of his office? Here, the sole question is, Was Price the agent of the company for any purpose?

To establish an agency, in the absence of direct proof, as in this case, there may be submitted proof of facts which tend to show recognition by the principal of the alleged agents' authority; a holding out to the world of the alleged agent by the principal, as having authority in the premises; receiving the profits arising from the acts of the alleged agent or the application thereof to the principal's use and benefit; knowledge upon the part of the principal of the acts of the alleged agent and failure upon his part to disavow the acts of the alleged agent within reasonable time; communication between the principal and the alleged agent in which the authority of the agent is expressly or impliedly admitted; payment by the principal of debts contracted by the alleged agent in the name of the principal; subsequent ratification of acts of the alleged agent, which ratification may be manifested by silence of the principal after knowledge of the facts.

No evidence tending to prove any of the above facts was introduced at the trial.

All of the authorities cited by appellee, are cases where the authority of a duly *appointed* manager or agent to bind his principal in a particular matter are in issue, not the fact of the *appointment* of a mana-

ger or agent, and for this reason the authorities cited are not in point.

It is admitted that Price was a director and treasurer of the corporation.

Appellee argues, from this fact, that the defendant was bound for the acts of Price as such officer, and quotes in support thereof the following from *Union Gold Mining Co. v. Rocky Mountain National Bank*, 2 Colo. 248:

"If an officer of a corporation is allowed to exercise general authority in respect to the business of the corporation, or a particular branch of it, for a considerable time, in other words, if he is held out to the world as having authority in the premises, the corporation is bound by his acts in the same manner as if authority had been expressly granted."

In the above case the acts of the president of the corporation were under discussion. The president being the principal executive officer of a company, and as such charged with the management and operation of the property of the company, his acts in purchasing necessary supplies, employing men, hauling ore, etc., would clearly be within the scope and extent of the authority conferred upon him, by virtue of his office. The treasurer of a corporation, however, is invested with no such authority by virtue of his office. Ordinarily the treasurer is simply the custodian of the funds of the corporation, and its disbursing officer. In the absence of proof that the treasurer was authorized by appropriate action of the corporation to take possession of and operate the property of the corporation, such authority will not be presumed or implied by virtue of his office, and the assumption thereof would be unwarranted and his acts in that behalf would not bind the corporation.

The duty of third persons dealing with an ostensible agent is thus stated by Mr. Mechem:

"In approaching the consideration of the inquiry whether an assumed authority exists in a given case, there are certain fundamental principles which must not be lost sight of. Among these are, as has been seen, that the law indulges in no bare presumption that an agency exists; it must be proved or presumed from facts; that the agent cannot establish his own authority, either by his representations or by assuming to exercise it; that an authority cannot be established by mere rumor or general reputation; that even a general authority is not an unlimited one, and that every authority must find its ultimate source in some act of the principal. Persons dealing with an assumed agent, therefore, whether the assumed agency be a general or special one, are bound, at their peril, to ascertain not only the fact of the agency but the extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it."—Mechem on Agency, § 276.

This doctrine has been expressly approved by this court in *Lester v. Snyder,* 12 Colo. App. 351, 356; *Gates I. Wks. Co. v. Denver Eng. Wks. Co.,* 17 Colo. App. 15-18.

The appellee failed to establish the authority of Price to act as the agent of the corporation.

The court erred in refusing to charge the jury to return a verdict for the defendant, and for this reason the judgment will be reversed.

*Reversed.*